662 F.2d 1008
 1 Ed. Law Rep. 84
 Portia WILLIAMS, Appellant,
v.
The RED BANK BOARD OF EDUCATION, Joan D. Abrams,
Individually and as Superintendent of the Red Bank School
District, Catherine Cadman, Individually and in her official
capacity, Richard T. Doherty, Individually and in his
official capacity, Michael S. Ellegood, Individually and in
his official capacity, Frances H. Kinkle, Individually and
in his official capacity, Ronald D. Sachs, Individually and
in his official capacity, Marcelle Seruby, Individually and
in her official capacity, Dorothy Setaro, Individually and
in her official capacity, Stephen M. Popper, Individually
and in his official capacity, and Fred G. Burke,
Commissioner of Education of the State of New Jersey, in his
official capacity, Appellees.
 No. 81-1275.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 14, 1981.
Decided Oct. 26, 1981.
As Amended Nov. 18, 1981.
 
 Arnold M. Mellk (argued), William A. Fead, Greenberg & Mellk, Trenton, N. J., for appellant.
 Robert J. Kelly (argued), William B. McGuire, Lum, Biunno & Tompkins, Newark, N. J., for defendants-appellees, Red Bank Bd. of Ed., Joan D. Abrams, Catherine Cadman, Richard Doherty, Michael S. Ellegood, Frances H. Kinkle, Ronald D. Sachs, Dorothy Setaro and Stephen M. Popper.
 James R. Zazzali, Atty. Gen. of New Jersey, Erminie L. Conley, Asst. Atty. Gen., Jaynee LaVecchia, Deputy Atty. Gen. (argued), Trenton, N. J., for appellee, New Jersey State Commissioner of Ed.
 Before SEITZ, Chief Judge, and ADAMS and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GARTH, Circuit Judge.
 
 
 1
 This is an appeal from an order of the district court for the District of New Jersey dismissing a suit brought under 42 U.S.C. § 1983 on the ground that Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny mandated abstention in favor of a state administrative tenure proceeding brought against a school teacher. We hold that while the district court was correct in abstaining, it nevertheless should have retained jurisdiction of the federal action pending the outcome of state proceedings. Accordingly, we will vacate the district court's order of dismissal and direct the district court on remand to stay all federal proceedings until state proceedings have been completed.
 
 I.
 
 2
 Plaintiff Portia Williams is a tenured school teacher employed by the Red Bank Board of Education ("the Board") in New Jersey. On March 11, 1980, Williams, a black woman, attended a meeting of the Board and criticized its policies regarding the recruitment and hiring of minorities as inadequate.
 
 
 3
 On May 6, 1980, Joan D. Abrams, the Superintendent of the Red Bank Public Schools, and one of the defendants, filed a Statement of Charges and a Statement of Evidence with the Board pursuant to N.J.Stat.Ann. 18A:6-11. The Statement of Charges set forth three charges, for which Williams' dismissal from tenure was sought:
 
 CHARGE NO. 1
 
 4
 Portia Williams, on several occasions, has struck pupils in her class with a ruler. This conduct is in direct violation of N.J.S. 18A:6-1, which specifically prohibits corporal punishment of pupils.
 
 CHARGE NO. 2
 
 5
 Portia Williams, on several occasions, has publicly humiliated one of her pupils in front of the entire class, questioning his cleanliness and health habits. Questioning cleanliness and health habits may be appropriate in this particular situation, but the humiliating, public manner in which it was done was highly improper and unprofessional.
 
 CHARGE NO. 3
 
 6
 Portia Williams, at a Board of Education public meeting, held on March 11, 1980, at the Primary School in Red Bank, did make racist and anti-Semitic remarks. These remarks were directed at the Administration of the Red Bank Board of Education and constituted unbecoming conduct by an employee of the Red Bank Board of Education.
 
 
 7
 On June 3, 1980, the Board referred the charges to the New Jersey State Commissioner of Education ("the Commissioner") for a hearing pursuant to N.J.Stat.Ann. 18A:6-11, -16. The Board also suspended Williams with pay pending final determination of the charges. Ten days later, the Commissioner referred the charges to the New Jersey Office of Administrative Law, pursuant to N.J.Stat.Ann. 18A:6-10, and 52:14F, for a hearing and an initial decision.
 
 
 8
 The charges against Williams were thus awaiting administrative determination by the State of New Jersey when, on July 14, 1980, Williams brought this action in federal district court under 42 U.S.C. § 1983 against the Board, its members, and the Commissioner. The gravamen of Williams' Complaint was that:
 
 
 9
 11. (The first and second charges) ... levied by Abrams against plaintiff and certified to the Commissioner of Education by the Board are pretext. The institution of tenure termination proceedings against plaintiff is a direct reaction to her exercise of her right of free speech and her right to petition the government for redress of grievances.
 
 
 10
 12. By prosecuting tenure charges against plaintiff, under the color of the laws of the State of New Jersey, the defendants Abrams, the Board and its individual members have arbitrarily and discriminatorily punished plaintiff for the exercise of her rights guaranteed by the First and Fourteenth amendments to the United States Constitution and Article I, Paragraphs 6 and 18 of the New Jersey Constitution.
 
 
 11
 Complaint, PP 11, 12. Williams sought relief declaring that the filing of the administrative charges against her had violated her rights under the first and fourteenth amendments. She also sought an injunction against further prosecution of the charges in the state proceeding, as well as an order that the Board expunge all record of those charges from her personnel file. Finally, she sought damages, both compensatory and punitive, and attorney's fees as provided in 42 U.S.C. § 1988. Complaint, § VI.
 
 
 12
 The defendants[1] moved for a dismissal of the action on the ground that Younger v. Harris, supra, counselled abstention in favor of the pending state proceedings. The district court agreed and granted the motion to dismiss. Williams v. Red Bank Board of Education, 502 F.Supp. 1366 (D.N.J.1980).
 
 
 13
 In its opinion the district court first noted that Younger abstention had originally been found appropriate "when there is a pending criminal prosecution" in the state courts which poses no threat of great and immediate irreparable harm to the federal plaintiff. 502 F.Supp. at 1368-69 (emphasis in original). The court then noted that a number of Supreme Court cases since Younger had extended Younger abstention beyond the purely criminal context. Id. at 1369, citing Moore v. Sims, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); Huffman v. Pursue, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). As abstention was not barred simply on the ground that the pending state proceeding was civil rather than criminal, the district court concluded, the question of the applicability of Younger abstention to Williams' complaint must be squarely faced.
 
 
 14
 In deciding to grant the motion for dismissal, the district court found four considerations to be decisive. First, the state's interest in teacher disciplinary proceedings is a weighty one, and would be significantly hindered if the federal court was to grant an injunction.[2] Moreover, the fact that technically a local school board, rather than the state, was a party to the proceedings pending before the New Jersey Office of Administrative Law did not in any way diminish the importance of the state's interest. Id. at 1370. Similarly, the inability of the state to proceed with criminal charges as an alternative to the disciplinary proceedings was "immaterial" to the question of the weight of the state's interest. Id.
 
 
 15
 Second, the fact that the state proceedings to which the court would defer were administrative rather than judicial did not render Younger inapplicable. Citing this court's decision in Gipson v. New Jersey Supreme Court, 558 F.2d 701 (3d Cir. 1977), the district court held that "the on-going proceedings need not be pending in a state court" provided that review of the administrative determination is available afterwards in the state court system. 502 F.Supp. at 1370. As Williams has a right to appeal to the Appellate Division of the Superior Court of New Jersey, the district court found it appropriate to abstain in deference to the administrative hearing on the disciplinary charges.
 
 
 16
 Third, the district court held, the "bad faith" exception to Younger -which precludes a federal court from abstaining when the pending state proceedings have been brought in bad faith or to harass the federal plaintiff-was inapplicable here because Williams did not allege bad faith. The charge that the disciplinary proceedings were instituted in "direct reaction to her exercise of her right of free speech and her right to petition" was held by the district court to be insufficient to constitute an allegation of bad faith: "(n)o mention of an impermissible motive (was) ... made." Id. at 1370.
 
 
 17
 Finally, the court held that the state proceeding is adequate to vindicate Williams' federal claims. The district court did note that the administrative forum was not perfectly suited to deal with first amendment issues, and could not grant all the relief sought. But Williams, the court reasoned, had an appeal of right to the New Jersey courts, which were competent to deal with first amendment issues. Further, though the state proceeding was unable to provide the constitutional damages and the attorney's fees plaintiff sought, "she may seek that relief (in federal court) upon completion of the state proceedings." This postponement of a complete remedy, the court concluded, did not give rise to the "great and immediate" irreparable harm which is needed to remove an action from the ambit of Younger. Id. at 1371.
 
 
 18
 In light of these factors, the court dismissed the complaint and also denied a motion by Williams to stay the state proceedings pending resolution of her appeal of the dismissal to this court.[3] The hearings on the disciplinary charges were then held before an administrative law judge ("ALJ") in the New Jersey Office of Administrative Law on March 16-18, 1981. In two orders dated May 7, 1981, and July 10, 1981, the ALJ dismissed the second charge (humiliation of a student) and the third charge (conduct unbecoming a teacher) brought against Williams, but found Williams guilty of the first charge of violating the state's prohibition of corporal punishment. The ALJ determined that Williams should be denied her salary increment for the academic year 1980-1981, as an appropriate penalty for this last infraction.
 
 
 19
 The ALJ's findings and decision were then referred to the Commissioner for final determination, pursuant to N.J.Stat.Ann. 52:14B-10. In two orders of June 9, 1981, and August 27, 1981, the Commissioner affirmed the ALJ's decision in its entirety. The Board, dissatisfied with the Commissioner's decision, which only penalized Williams by denying her a salary increment rather than by dismissing her from her teaching position, has taken an appeal to the State Board of Education pursuant to N.J.Stat.Ann. 18A:6-27. Williams, dissatisfied with the Commissioner's decision to impose a sanction on the first charge, has also appealed her "guilty verdict" on that charge. No appeals have been taken by either party from Williams' "acquittals" on the second and third charges. The first charge is presently still pending before the State Board.
 
 II.
 
 20
 As the court below noted, "plaintiff's appeal presents serious and difficult legal issues." 508 F.Supp. at 991. These issues are threefold. First, are the principles of Younger inapplicable on the ground that the pending state proceedings were administrative rather than judicial? We hold that in the proper circumstances, Younger abstention may be warranted when the pending state proceeding is administrative. Second, do the facts of this case present such circumstances? We hold that they do. Third, should the district court have dismissed Williams' complaint, as it did, or should it have retained jurisdiction and accordingly stayed the federal action pending the final outcome of the state proceedings? We hold that under the circumstances presented here, jurisdiction should have been retained. We will discuss each issue in turn.
 
 III.
 A.
 
 21
 While state judicial proceedings are subject to Younger abstention, neither the Supreme Court nor this court has squarely answered the question whether a pending state administrative proceeding, without more, provides a sufficient basis for Younger abstention. It is clear, however, that the scope of the Younger doctrine has been expanding, and presently requires that abstention be decreed in cases far removed from proceedings to which the Younger case itself originally ordered deference. Thus, in Huffman v. Pursue, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the pending state proceeding was a civil enforcement action brought by the state, seeking to close down as a nuisance a theater showing obscene films. In holding Younger principles applicable, the Court ruled that the federal courts should abstain in favor of a pending state civil proceeding in which the state is a party and "the proceeding is both in aid of and closely related to criminal statutes." Id. at 604, 95 S.Ct. at 1208.
 
 
 22
 In Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), the Court extended the scope of Younger abstention even further. There a three-judge court had issued an injunction against a state civil contempt proceeding brought against judgment debtors. The district court held, "not implausibl(y)" in light of Huffman, supra, 430 U.S. at 334, 97 S.Ct. at 1216, that Younger did not apply because the contempt proceeding was neither a criminal action nor closely tied up with the state's criminal laws. The Supreme Court reversed, noting that "(a) state's interest in the contempt process, through which it vindicates the regular operation of its judicial system, ... is surely an important interest." 430 U.S. at 335, 97 S.Ct. at 1217. Because "(t)he contempt power lies at the core of a State's judicial system," failure to abstain would cause as much interference in an important state interest as it would where the pending state proceeding is a criminal one. Id. at 335-36, 97 S.Ct. at 1217-18. Thus, Younger abstention was warranted.
 
 
 23
 Subsequent cases have confirmed the broadened scope of Younger principles. In Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), the Court held abstention appropriate where the pending state proceeding was a civil attachment action brought by the state to recover welfare money wrongfully received. The Court noted that the state suit had been brought to vindicate important state policies involving the fiscal integrity of public assistance programs. Finally, in Moore v. Sims, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), the Supreme Court ordered abstention in favor of child custody proceedings that were pending in the state courts. See generally Johnson v. Kelly, 583 F.2d 1242, 1245-48 (3d Cir. 1978) (reviewing development of Younger doctrine).
 
 
 24
 These cases, moreover, stand for more than the narrow proposition that the Younger doctrine applies to pending state civil proceedings in which the state is a party and an important state interest is implicated. They demonstrate that the Younger doctrine is rooted in
 
 
 25
 the notion of "comity," that is, a proper respect to state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.
 
 
 26
 Younger v. Harris, 401 U.S. at 44, 91 S.Ct. at 750. It is with this "highly important" principle in mind, id. at 45, 91 S.Ct. at 751, that we consider the relevance of Younger abstention to state administrative proceedings.
 
 B.
 
 27
 Both the Supreme Court and this court have indicated, but without squarely holding, that Younger abstention may be appropriate where the pending state proceeding takes place in an administrative hearing rather than a judicial setting. In Geiger v. Jenkins, 401 U.S. 985, 91 S.Ct. 1236, 28 L.Ed.2d 525 (1971), the Supreme Court summarily affirmed a district court's decision to abstain in favor of an Alabama administrative proceeding to revoke a medical license. As Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), points out, however, the meaning of Geiger is "somewhat opaque." Id. at 576, 93 S.Ct. at 1697. Criminal proceedings were pending in the state court at the time of the federal district court's abstention, and the administrative proceedings were considered quasi-criminal under Alabama law. Nevertheless, as the Gibson Court noted, Geiger does indicate "that administrative proceedings looking toward the revocation of a license to practice medicine may in proper circumstances command the respect due court proceedings." Id. at 576-77,[4] 93 S.Ct. at 1697. It may also be noteworthy, that while the Supreme Court has not had the occasion since Gibson to rule directly on this issue,[5] some of its formulations of the Younger doctrine are quite broad. See e. g., Moore v. Sims, supra, 442 U.S. at 423, 99 S.Ct. at 2377 ("The Younger doctrine, which counsels federal-court abstention when there is a pending state proceeding, reflects a strong policy against federal intervention in the absence of great and immediate irreparable injury to the federal plaintiff.") (emphasis added).
 
 
 28
 Finally, the Supreme Court's decision in Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), establishes that the concerns of comity and federalism, which, as noted earlier, underlie the Younger doctrine, command the federal courts to respect not only the independence and functioning of the state courts, but of the state executive branch as well. There, the Court held that the district court had erred in granting broad injunctive relief against the Philadelphia Police Department. Such relief, the Court found, constituted too great an intrusion into the internal affairs of the Department to comport with "the principles of federalism which play such an important part in governing the relationship between federal courts and state governments." Id. at 380, 96 S.Ct. at 608. While these principles had initially been articulated in the context of deference to criminal proceedings pending in the state courts, the Court concluded that
 
 
 29
 these principles likewise have applicability where injunctive relief is sought, not against the judicial branch of the state government, but against those in charge of an executive branch of an agency of state or local governments....
 
 
 30
 Id.
 
 
 31
 If anything, the circumstances of the present case present a stronger argument for abstention than did those of Rizzo, for what is involved here is not a purely executive function, but a quasi-judicial, adjudicatory proceeding that in many respects resembles the judicial proceedings to which Younger has already been held to command deference in appropriate circumstances. Thus while they are not absolutely dispositive of the issue presented here, we nevertheless find cases such as Geiger and Rizzo highly persuasive authority for the proposition that Younger abstention is not rendered irrelevant simply by the fact that the pending state proceeding is "administrative" rather than "judicial" in character.
 
 
 32
 This Circuit, too, has assumed that Younger may apply to state administrative proceedings in proper circumstances, but it has not had the occasion to make a direct holding to that effect, or to delineate what those circumstances may be. In Gipson v. New Jersey Supreme Court, 558 F.2d 701 (3d Cir. 1977) (per curiam), this court held Younger abstention appropriate where disciplinary proceedings were pending against an attorney at the time that an action was commenced in federal district court. There, a county Ethics Committee had initiated a complaint against the plaintiff Gipson; in the course of the investigation that followed, Gipson was temporarily suspended from the bar for failure to comply with a subpoena to produce certain records. Gipson then sought an injunction in federal court, challenging his suspension, and the New Jersey system of attorney discipline generally, in an action filed in federal court. The district court abstained on Younger grounds and this court affirmed. Gipson's emphasis on the importance of the state interest at stake strongly suggests that it is that factor which is decisive, and not the characterization of the pending state proceedings as "judicial" or "administrative." Gipson cannot be read as the last word on the issue of abstention in favor of state administrative proceedings, however, for at the time that Gipson filed his complaint in federal court, the New Jersey Supreme Court had already become directly involved in the enforcement of the subpoena and the suspension order.
 
 
 33
 Since then, this court has assumed, but without deciding, that there are circumstances in which deference to state administrative proceedings may be proper under Younger,[6] but it has not ruled on the issue squarely.[7] There is, nevertheless, substantial support in the case law for the application of Younger in cases in which the pending state proceeding was administrative. In McCune v. Frank, 521 F.2d 1152 (2d Cir. 1975), administrative proceedings had been brought by the Nassau County Police Department against a police officer; while they were pending, he brought an action in federal court, alleging that the Department's disciplinary board was institutionally biased. In remanding the case to the district court to determine whether the federal action was barred by the possible res judicata effects of an earlier decision in the state courts, the Second Circuit advised the district court to consider the question of Younger abstention as well:
 
 
 34
 That we are dealing with a county police department's disciplinary proceeding rather than a state court's action is of little moment. A proceeding in state court is not a prerequisite to the applicability of Younger.... Geiger establishes that Younger has relevance to administrative proceedings....
 
 
 35
 Id. at 1158. See Schachter v. Whalen, 445 F.Supp. 1376 (S.D.N.Y. 1978) (following McCune and abstaining under Younger in favor of state administrative proceeding leading to medical license revocation), aff'd per curiam on other grounds, 581 F.2d 35 (2d Cir. 1978).
 
 
 36
 Similarly, in Grandco v. Rochford, 536 F.2d 197 (7th Cir. 1976), an administrative proceeding to revoke a theater license was pending at the time an action was brought in federal district court. The Seventh Circuit noted that "(r)ecent decisions establish that Younger's principles may demand federal restraint in some circumstances where pending state proceedings are civil or even administrative." Id. at 206.[8]
 
 
 37
 Finally, in Rosko v. Pagano, 466 F.Supp. 1364 (D.N.J.1979), the district court ordered abstention in favor of a state administrative proceeding. A state police officer had been charged with "leaking" the report of a background investigation of a nominee for the Casino Control Committee. While the disciplinary charges were pending, the officer brought suit in federal court under § 1983, claiming that the hearing officer was biased and that his "leak" was protected by the first amendment. The court agreed with the claim of bias and ordered that a neutral ALJ from the New Jersey Office of Administrative Law preside over the hearing. Id. at 1370. Having thus remedied the defect of a biased decisionmaker, the district court went on to consider the question of Younger abstention. The district court noted that the earlier distinction between civil and criminal cases, under which Younger applied to the latter but not to the former, had broken down and "is no longer of controlling significance." Id. at 1371. From this development the court drew the more general conclusion that it was not the label-"civil" versus "criminal," or "administrative" versus "judicial"-that guides the application of Younger principles.
 
 
 38
 Rather, the strength of the State's interest in unrestrained performance of a legitimate governmental function as a means of effectuating its policy ... (forms) the central consideration in an analysis of the propriety of abstention.
 
 
 39
 Id. Because the state's interest in the discipline of its police officers was of great importance, the district court abstained.
 
 
 40
 We, too, are persuaded that the fact that the pending state proceeding is administrative rather than judicial should not by itself foreclose the application of the Younger doctrine. Administrative regulation often forms a crucial aspect of a state's implementation of its laws, and to bar Younger abstention simply on the ground that the pending proceedings are "administrative" could easily undermine important state policies and concerns. Such a result would not respect the Supreme Court's repeated admonitions that the "more vital consideration" underlying Younger is "the notion of comity." See, e. g., Younger v. Harris, supra, 401 U.S. at 44, 91 S.Ct. at 750; Juidice v. Vail, supra, 430 U.S. at 334, 97 S.Ct. at 1216; Trainor v. Hernandez, supra, 431 U.S. at 441, 97 S.Ct. at 1916.
 
 
 41
 There is, to be sure, broad language in a few cases to the effect that a sharp line should be drawn between administrative and judicial proceedings, with abstention being applied only in favor of the latter. On closer examination, however, these cases stand for the general proposition, with which we fully agree, that a plaintiff need not exhaust state remedies (either administrative or judicial) before suing under § 1983.[9]
 
 
 42
 In sum, our analysis and our reading of Younger cases impress us that where federal intervention into state administrative proceedings would be substantial and disruptive, and where the state proceedings are adequate to vindicate federal claims and reflect strong and compelling state interests, the district court, pursuant to Younger, should abstain. Thus, we must consider next whether other and apart from the mere administrative nature of the state proceeding, there are additional considerations present in this case which required the district court to abstain.
 
 IV.
 
 43
 Our inquiry into whether the district court was correct in concluding that the present case manifested the proper circumstances for abstention falls into two parts. First, is the state's interest in going forward with the tenure proceeding without intrusion by the federal courts sufficiently weighty to mandate Younger abstention? Second, is the administrative forum provided by New Jersey for the resolution of teacher disciplinary charges adequate to vindicate Williams' first amendment claims?
 
 A.
 
 44
 The state's interest in education is a substantial one, as Williams herself concedes. Indeed, "(p)roviding public schools ranks at the very apex of the function of a State." Wisconsin v. Yoder, 406 U.S. 205, 213, 92 S.Ct. 1526, 1532, 32 L.Ed.2d 15 (1972). Essential to the performance of this critically important function, moreover, is a professional and competent body of teachers capable of meeting high standards of conduct. Thus, New Jersey has established a comprehensive statutory scheme which provides that a teacher who fails to live up to the required standards may be disciplined or even removed from tenure. See generally N.J.Stat.Ann. 18A:6-10 to 18A:6-18. Any intervention by the federal courts into the functioning of the tenure scheme would seriously hinder New Jersey in its attempt to fulfill its commitment to provide public education.
 
 
 45
 In the present case, it is clear that had the district court denied the motion to abstain, and then proceeded to enjoin further prosecution of the tenure charges-whether on the merits or simply pending final resolution of the federal claims on the meritsthere would have been a serious disruption in the functioning of New Jersey's elaborate system for the resolution of tenure disputes.[10] The question for this court, therefore, is whether the state interest that would thereby have been disrupted is sufficiently weighty to merit abstention under the Younger doctrine.
 
 
 46
 We think that the state interest in education is precisely the sort of interest which the notions of comity and federalism, embodied in the Younger doctrine, command the federal courts to respect.[11] It is true that were our decision in this case governed by the test laid out in Huffman v. Pursue, supra, we might reach a different conclusion: the statute governing tenure disputes is not closely in aid of a criminal statute, nor does it appear that the state had the option of proceeding against Williams on criminal charges. It is clear, however, that the scope of Younger abstention is no longer so limited. In Trainor v. Hernandez, the pending state proceeding was a suit to recover welfare money that had allegedly been received under fraudulent pretenses. The Supreme Court held the state's interest sufficiently strong to merit abstention:
 
 
 47
 (T)he fact remains that the State was a party to the suit in its role of administering its public-assistance programs. Both the suit and the accompanying writ of attachment were brought to vindicate important state policies such as safeguarding the fiscal integrity of those programs. The state authorities also had the option of vindicating these policies through criminal prosecutions.
 
 
 48
 431 U.S. at 444, 97 S.Ct. at 1918. In Moore v. Sims, supra, child custody proceedings were pending at the time the federal action was commenced. Thus, the interest at stake there, which the Court found sufficiently strong to merit abstention, was the state's interest in the welfare of the child. While the Court noted that, as in Huffman, the state could have proceeded with criminal child abuse charges, it stated that that factor was not the sole basis upon which abstention might be predicated. Rather, "the presence of such other vital concerns as enforcement of contempt proceedings, ... or the vindication of 'important state policies such as safeguarding the fiscal integrity of (public assistance) programs,' " might also justify Younger abstention. 442 U.S. at 423, 99 S.Ct. at 2377.
 
 
 49
 Clearly, the state's interest in the provision of education is at least as important, if not more so, as its concern for the fiscal integrity of the programs it administers. To hold otherwise would conflict not only with the Supreme Court's pronouncements that the "more vital consideration" underlying Younger is the need to accommodate important state interests, but also with a substantial body of case law that holds Younger abstention applicable to a wide variety of situations. See, e. g., Kenner v. Morris, 600 F.2d 22 (6th Cir. 1979) (per curiam) (pending divorce and alimony proceedings); Schachter v. Whalen, supra, (pending administrative proceedings leading to the revocation of a medical license); Rosko v. Pagano, supra (disciplinary proceedings involving police officers). See generally, 17 C. Wright, A. Miller, and E. Cooper, Federal Practice and Procedure § 4254 (1978).
 
 
 50
 Williams claims, however, that the state's interest in the teacher disciplinary proceedings cannot be very strong because New Jersey is not even a party to them. Williams argues that it was the local school board, and not the Commissioner or the State Board of Education, that pressed the charges against her. Moreover, in Johnson v. Kelly, 583 F.2d 1242, 1245-51 (3d Cir. 1978), this court held that Younger abstention does not apply when the pending state proceedings were not initiated by the state.[12] Thus, Williams concludes, abstention is inappropriate here. See Appellant's Brief at 25-27.
 
 
 51
 Williams is correct in arguing that, under the statutory scheme that New Jersey has devised, it is technically the local school board that presses disciplinary charges against a teacher. However, we reject Williams' argument that this factor somehow weakens the state's interest in this case; nor are we persuaded that the state is not a "party" here for purposes of this court's holding in Johnson v. Kelly.
 
 
 52
 To begin with, the state is very much involved in the disciplinary proceedings. It is a state official-the Commissioner-who certifies the charges for administrative hearing; it is a state official-an ALJ-who presides over the hearing and makes findings of fact and recommendations of law; it is a state official-once again, the Commissioner-who then adopts, rejects, or modifies the ALJ's findings. Finally, it is to a state body-the State Board of Education-to which an appeal of the Commissioner's decision may be taken. See N.J.Stat.Ann. 18A:6-27. More fundamentally, the responsibility for providing public education rests ultimately upon the state, and the statutes that have given rise to the tenure action are all state statutes. That New Jersey chooses to discharge this responsibility through the local school districts and boards that it has created is irrelevant: Younger commands respect for important state interests, not for technicalities of form.[13]
 
 
 53
 Finally, Williams' argument rests on a misreading of this court's holding in Johnson v. Kelly. There, the plaintiffs' federal complaint challenged the constitutionality of Pennsylvania's tax sales statute, which provided for the sale of land for which property tax payments were in arrears. The proceeding that was pending in state court was an action between two private litigants seeking to quiet title to privately owned land that had been purchased pursuant to the tax sales statute. This court held that where the pending state proceeding is a privately-initiated one, the state's interest in that proceeding is not strong enough to merit Younger abstention, for it is no greater than its interest in any other litigation that takes place in its courts. 583 F.2d at 1251-52. See also New Jersey Education Association v. Burke, 579 F.2d 764, 771 (3d Cir.) (refusing to uphold abstention where "the only pending proceeding is a civil action filed by a federal plaintiff in a state court"), cert. denied, 439 U.S. 894, 99 S.Ct. 252, 58 L.Ed.2d 239 (1978). The contrast between a privately initiated suit and one begun by an instrumentality of the state, and in which the state is intimately involved from the start, could not be greater.
 
 
 54
 For these reasons, we hold that New Jersey's interest in its teacher disciplinary hearings is strong enough to merit abstention under the Younger doctrine.
 
 B.
 
 55
 The second prerequisite to the application of Younger abstention is that the state proceeding be adequate to resolve the plaintiff's federal claims. The importance of this requirement is easily seen in the classic Younger situation. In that situation, the defendant in a state criminal trial seeks to have the federal court enjoin the prosecution on federal constitutional grounds, and the federal court refuses to do so on the ground that the plaintiff can raise his federal claims as a defense to the state criminal charges. It follows that if the federal plaintiff is unable to raise those claims in the state proceeding, Younger abstention is inappropriate. The same test, moreover, applies where the proceeding to which the federal court defers is a civil one. See, e. g., Juidice v. Vail, supra, 430 U.S. at 337, 97 S.Ct. at 1218 ("(n)o more is required to invoke Younger abstention" than that plaintiffs "be accorded an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings"); Moore v. Sims, supra, 442 U.S. at 425-26, 99 S.Ct. at 2378-79 (same).
 
 
 56
 Williams argues that the adjudication of the tenure charges against her is inadequate to vindicate her first amendment claims. In effect, she asserts four bases for this contention. First, she argues that the state proceedings are not even an "adjudication" to which the federal courts can defer. Second, she claims that the administrative proceedings are inadequate because New Jersey ALJs need not be lawyers. Third, she asserts that the fact-finding procedures governing the disciplinary hearing are inadequate because, under New Jersey law, the ALJ is not bound by the procedures and rules of evidence used in the courts. See, e. g., N.J. Admin. Code 1:1-15.8(a) (hearsay admissible). Finally, she points out that at no point in the state proceeding-whether before the ALJ, the Commissioner, or the State Board of Education-can she be awarded the constitutional damages and the attorney's fees she sought in her federal complaint.
 
 
 57
 We find Williams' first two arguments unpersuasive because Garden State Bar Ass'n v. Middlesex County Ethics Comm., supra, upon which those arguments are based, is distinguishable from the present case. In that case, this court reversed a district court's decision to abstain in favor of a disciplinary proceeding pending against an attorney. The basis for the decision was the holding that the disciplinary proceeding pending against the attorney at the time he filed his complaint in federal court had not progressed beyond the "prosecutorial" stage to an "adjudicative" one, and that "the prosecutor's office is not the appropriate stage at which the federal plaintiff's constitutional rights can be vindicated." 643 F.2d at 128.
 
 
 58
 Applying this distinction to the present case, as we are compelled to do, see United States Court of Appeals of the Third Circuit, Internal Operating Procedures, Chapter VIII, § C, we reject Williams' argument that the proceedings before the ALJ are not "adjudicative" under the Garden State test. The ALJ conducts extensive hearings and makes detailed findings of fact and conclusions of law, and the decisions of the ALJ become binding and enforceable in the New Jersey courts unless the Commissioner modifies or rejects them within 45 days. This procedure is clearly an adjudication. Compare Garden State, supra, 643 F.2d at 128 ("The proceedings before the District Ethics Committee cannot be classified as adjudicative because they are limited to fact-finding ... and they cannot result in the imposition of any discipline.").
 
 
 59
 We are similarly unpersuaded by Williams' second argument claiming an inadequacy of the state proceedings. Citing Plano v. Baker, 504 F.2d 595 at 599 (2d Cir. 1974), and this court's decision in Garden State Bar Ass'n, supra, 643 F.2d at 126, Williams also argues, as noted above, that the administrative process for resolving her first amendment claims is inadequate because neither the Commissioner nor the ALJs in New Jersey's Office of Administrative Law need be lawyers. Williams' contention is not persuasive inasmuch as the ALJ who presided over her hearing was in fact a lawyer. Even if we were to accept Williams' argument that the adequacy of the tribunal, and not of the ALJ who in fact presided is the controlling question, we do not read either Garden State or Plano v. Baker as holding that the simple fact that nonlawyers may be called to pass upon constitutional issues renders a tribunal inadequate. The distinction, rather, is that between an "adjudicatory body," which may or may not be composed solely of lawyers, and informal proceedings that do not even rise to the level of "adjudication." Only the latter fails the test of adequacy under Younger, Plano, and Garden State.
 
 
 60
 Nor are we convinced by Williams' third contention regarding the ALJ's procedures. To call an administrative hearing "inadequate" because it follows different rules of evidence and procedure would be little different from holding that Younger does not apply to administrative hearings, since administrative procedures generally are different from those employed in the courts. More fundamentally, there is no reason to believe that the test of "adequacy" for Younger purposes is intended to require the federal courts to defer only to proceedings with identical, or even substantially the same, procedures as those used by the judiciary. The kind of procedural inadequacy contemplated by the "adequacy" requirement of Younger is more basic than that. In Grandco v. Rochford, 536 F.2d 197 (7th Cir. 1976), for example, the Seventh Circuit upheld the district court's refusal to abstain in a challenge to the constitutionality of a municipal ordinance governing the licensing of movie theaters. The court held that the state proceedings were inadequate to vindicate federal claims:
 
 
 61
 The state proceedings here are not before a court or any established adjudicatory body. Instead, the determination is to be made by the mayor after a hearing before his appointee. State court review of his decision by common law certiorari is a limited review on the record; the court's inquiry is solely whether it appears on the face of the record that the agency had jurisdiction and that its action was legal and supported by evidence.
 
 
 62
 536 F.2d at 206. Cf. Plano v. Baker, 504 F.2d 595, 598 (2d Cir. 1974) (exhaustion of administrative remedies) (finding an administrative procedure inadequate to vindicate federal claims where oral argument could be presented only at the discretion of the agency head, the examination and cross-examination of witnesses were expressly forbidden, and "nowhere in the administrative process ... was there a procedure designed to resolve factual issues"). Here, we are not persuaded that the New Jersey administrative hearing accorded to Williams is that informal and of such a limited scope that it "clearly bars the interposition of the constitutional claims," Moore v. Sims, supra, 442 U.S. at 426, 99 S.Ct. at 2378.
 
 
 63
 In contrast to Grandco, for example, New Jersey has established a carefully constructed procedure for the introduction of evidence, cross-examination of witnesses, briefing of disputed factual and legal issues, and the like. See generally N.J.Stat.Ann. 52:14B; N.J.Admin. Code 1:1-1 to 1:1-17. Moreover, neither the ALJ nor the Commissioner is in any way barred from considering the constitutional claims, see generally Winston v. Board of Education, 64 N.J. 582, 319 A.2d 226, (1974), and in fact the third charge against Williams-that of unbecoming conduct-was dismissed by the ALJ, with the Commissioner affirming the dismissal, precisely on the ground that Williams' speech at the Board meeting in March of 1980 was protected by the first amendment. See Order of Beatrice S. Tylutki, ALJ (May 7, 1981) (dismissing "unbecoming conduct" charge on first amendment grounds). Under these circumstances, we have no difficulty in rejecting Williams' first argument contending that the state proceeding was inadequate.
 
 
 64
 Williams' final argument claiming inadequacy in the state disciplinary proceeding-the unavailability at any point in the administrative process, including any state judicial review thereof, of an opportunity to assert her constitutional claims leading to damages and attorney's fees-is more substantial, and is discussed more fully, infra, Part V. In the traditional Younger situation, the relief available in state court (acquittal or dismissal of the criminal charges) mirrors the relief sought in federal court (an injunction against prosecution). Even in the civil cases to which the Supreme Court has applied the Younger doctrine, it was only injunctive relief that was sought. Here, in contrast, no matter what the outcome of the state proceedings, Williams will have to pursue her claims at some time in the federal courts if she desires constitutional damages and attorney's fees. Moreover, Williams argues, she may be precluded from relitigating any issues decided adversely to her in those. See Williams v. Red Bank, supra, 508 F.Supp. at 995.
 
 
 65
 Nevertheless, we do not believe that these considerations render the state tenure proceeding "inadequate" for purposes of Younger abstention. Certainly the state forum here is capable of granting a substantial portion of the relief Williams seeks. That is, the ALJ and the Commissioner have the power to dismiss the tenure charges against her, and such a decision would provide Williams with the same relief that a federal injunction against prosecution of the charges would afford. Furthermore, any res judicata effects which may stem from the state administrative proceeding, or from any review thereof by the New Jersey state courts, are simply not relevant to a determination as to whether the administrative proceeding is adequate to vindicate federal constitutional claims. Thus we decline to reach or decide such an issue in this case as it is not properly before us.[14]
 
 V.
 
 66
 Having concluded that in all respects other than Williams' constitutional claims leading to damages and attorney's fees the district court did not err in abstaining, we turn next to a consideration of the appropriate disposition of that aspect of her complaint, recognizing that the district court dismissed Williams' entire complaint without prejudice. See Williams v. Red Bank, supra, 502 F.Supp. at 1371. We are aware that in so doing, the district court followed the typical procedure in Younger cases, which is to dismiss the complaint once it is found appropriate to abstain. See, e. g., Gipson v. New Jersey State Supreme Court, supra, 558 F.2d at 703.
 
 
 67
 In most Younger abstention cases, it is logical to dismiss rather than to retain jurisdiction of the federal action and stay further proceedings in the federal court pending the outcome of the state proceedings. In the classic Younger situation, for example, the plaintiff seeks an injunction ordering a halt to the prosecution of criminal charges against him in state court. In abstaining, the federal court thereby decides that the plaintiff has an adequate opportunity to assert his federal claims as a defense to the charges in state court. In those circumstances, and at that stage in the federal proceeding, the denial of the injunctive relief in federal court effectively operates as a complete denial of relief in the federal courts on that complaint. Once the criminal trial has taken place in the state courts, any order enjoining prosecution of the charges would, of course, be meaningless. Because the federal district court's role is at an end at the point at which the court abstains, a dismissal is entirely appropriate. More generally, dismissal is appropriate wherever the district court's decision to abstain has the effect of denying plaintiff all relief in federal court.[15]
 
 
 68
 The present case raises a novel issue, however, in that Williams' § 1983 complaint not only sought relief which could only be granted in the state tenure proceeding, but it also sought relief that could not be granted in that proceeding. In her complaint, Williams prayed not only for an injunction against prosecution of the tenure charges, but also for constitutional damages and attorney's fees. Yet, as both parties agree, the most relief Williams could possibly obtain in the state tenure proceeding would be a dismissal of the charges lodged against her and an award of back pay. The award of back pay, of course, would be of little practical significance to Williams inasmuch as her suspension had been ordered with pay. It was for this reason that the district court observed in its opinion, that Williams might wish to return to federal court after the disciplinary proceedings have been fully resolved and seek damages and attorney's fees in federal court.
 
 
 69
 In light of these considerations, we believe that the proper course for the district court to have taken, once it determined that Younger abstention was appropriate, would have been to retain jurisdiction over that portion of Williams' complaint which sought relief not available in the disciplinary proceedings. Implementing this ruling, the district court should have stayed the federal action until the tenure charges had been resolved through the administrative process, and, if desired, any judicial review thereof, established by New Jersey for that purpose. At that point, if Williams so desires, she could then return to the district court for the relief available in that court, relief which was still undetermined. See Gebert v. Hoffman, 328 F.Supp. 574 (E.D.Pa.1971) (abstaining under Younger and retaining jurisdiction).
 
 
 70
 There are compelling reasons, both jurisdictional and practical, for retaining jurisdiction while staying the federal proceedings. As a matter of the proper exercise of the federal courts' jurisdiction, we cannot justify dismissing a claim for constitutional damages and consequent attorney's fees when the state forum is unable, as it is here, to grant that relief. Nor can we sustain such a dismissal even though it encourages a future complainant to return to federal court for the vindication of such claims. Such a course of action, aside from the practical difficulties it creates,[16] is not consistent with the federal courts' duty to assume jurisdiction where jurisdiction properly exists.
 
 
 71
 There are equally compelling reasons for staying the federal action until the state proceedings are terminated. Because it would allow the state proceedings to proceed unimpeded, a stay of the federal action serves the underlying purposes of Younger abstention. Further, it is difficult to see how the federal court could adjudicate Williams' constitutional claims and attorney's fees until after all disciplinary proceedings have been finally completed. How could the damages be calculated, for example, until it is known whether Williams is to be "acquitted," discharged, or suffer a reduction in salary? Williams' claim for constitutional damages and attorney's fees, and the state's interest in adjudicating tenure charges, are both served by an order dismissing that portion of Williams' complaint which sought an injunction against the tenure proceedings, and staying the federal proceedings on the claims remaining in her complaint. Once the state proceedings are terminated, any further action in federal court would interfere with important state interests no more than does any other suit brought under § 1983.
 
 
 72
 The issuance of a stay of the federal proceedings, moreover, comports fully with the Supreme Court's Younger doctrine. As we have noted, the Younger doctrine is a flexible body of law attuned not to the mechanical application of prior precedent, but to the essential needs of a federal system. The mere fact that dismissal is the typical consequence of a finding that Younger abstention is appropriate does not dictate dismissal in the present case. Rather, it simply reflects the fact that in all of the cases in which the Court has found Younger abstention appropriate, the relief that was sought was an injunction against the pending state proceedings, and not the hybrid relief sought here.
 
 VI.
 
 73
 We will therefore vacate the district court's order of January 2, 1981, which dismissed Williams' complaint in toto. In accordance with our discussion herein, we will remand the action to the district court for reinstatement of so much of her complaint as was improperly dismissed pursuant to Younger,[17] and for further proceedings consistent with this opinion.[18] Each party will bear its own costs.
 
 
 
 [1]
 The record discloses that all of the defendants, except Marcelle Seruby, moved to dismiss Williams' complaint. No explanation is given as to why her name was not listed as one of the movants. Nor is there any indication in the record as to the present status of Seruby, who (as with the other members of the Board) was joined individually as well as in her official capacity. We are satisfied, however, that the district court's order of January 2, 1981, is a final order for purposes of our jurisdiction because the district court ordered a blanket dismissal of the complaint without any reservation, thereby including all party defendants
 
 
 [2]
 The court noted that
 New Jersey has established ... an extensive regulatory scheme by which charges against a tenured teacher may be brought .... These regulations ... demonstrate the significance of the state's interest in the regulation of public education. If this Court were to (enjoin the disciplinary proceedings) ... such action would clearly interfere with the state's attempt to forward its interest in education.
 
 
 [502]
 F.Supp. at 1369
 
 
 [3]
 The district court denied the motion to stay the state proceeding on the ground that Williams had not "made a showing of a substantial probability of success on appeal." Williams v. Red Bank Board of Education, 508 F.Supp. 989, 994 (D.N.J.1981). The court also held that the strong public interest in avoiding disruption of disciplinary proceedings outweighed any possible harm to Williams from allowing the state hearing to take place. Id. at 995
 Williams thereafter made a motion before this court to stay the administrative proceedings. That motion was denied on March 12, 1981.
 
 
 [4]
 Nor did Gibson itself resolve the issue. There, an administrative complaint was pending against the federal plaintiffs. The Supreme Court did not have to decide whether Younger abstention can be ordered in favor of routine administrative hearings, because in Gibson, it found the agency to be institutionally biased: the self-employed optometrists who made up the Board were to pass on the propriety of optometrists being employed by corporations. Because of this bias, the state proceeding was not "adequate." See 411 U.S. at 578-79, 93 S.Ct. at 1697-98
 
 
 [5]
 In Ohio Bureau of Employment Services v. Hodory, 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977), the contention was raised that Younger is inapplicable to pending state administrative proceedings. Because the Court ruled that Ohio had consented to adjudication of the issues in federal court, the Supreme Court did not pass on that contention. Id. at 477-80 & n.10, 97 S.Ct. at 1902-04 & n.10
 
 
 [6]
 For a general discussion of Younger abstention and administrative proceedings, see Garden State Bar Ass'n v. Middlesex Co. Ethics Comm., 643 F.2d 119, 127-28 (3d Cir.), reh. denied, 651 F.2d 154 (3d Cir. 1981), petition for cert. filed, 50 U.S.L.W. 3175 (No. 81-460, September 5, 1981). In Garden State, we held that abstention was not appropriate. See Part IV B, infra
 
 
 [7]
 In Herz v. Degnan, 648 F.2d 201 (3d Cir. 1981), this court affirmed the district court's refusal to abstain when an order for a hearing on a medical license revocation was pending. There, however, the administrative proceeding was apparently not authorized under state law, and seems to have been instituted in bad faith. See id. at 209-10. Moreover, the administrative order calling for a hearing had been issued after "substantial litigation ha(d) occurred" in federal district court. Id. at 209; see Hicks v. Miranda, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975)
 
 
 [8]
 The court held that abstention was not warranted in that case, however, because it found the state proceeding an inadequate forum to vindicate plaintiff's federal claims. Id. at 206-07
 
 
 [9]
 Williams cites Leonard v. City of Columbus, 551 F.2d 974 (5th Cir.), adopted mem. en banc, 565 F.2d 957 (5th Cir. 1977), cert. denied, 443 U.S. 905, 99 S.Ct. 3097, 61 L.Ed.2d 872 (1979), as support for the proposition that administrative proceedings do not deserve Younger deference. In Leonard, several policemen sued under § 1983 claiming that racial discrimination lay behind their termination from the force. At the time suit was filed, final administrative action had been taken upholding the discharges; plaintiffs had not, however, taken an appeal to the state courts, even though state law permitted them to do so. 551 F.2d at 977. In holding abstention inappropriate, the Fifth Circuit did no more than apply the rule of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that plaintiffs need not exhaust state judicial remedies before seeking relief in federal district court under § 1983
 The same appears to be true with respect to Members of Jamestown School Comm. v. Schmidt, 427 F.Supp. 1338, 1340-44 (D.R.I.1977), and Hodory v. Ohio Bureau of Employment Services, 408 F.Supp. 1016 (N.D.Ohio 1976) (three-judge court), aff'd on other grounds, 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977), in which the district courts refused to abstain simply on the ground that there were administrative appeals available to the federal plaintiffs.
 While Clark v. Weeks, 414 F.Supp. 703, 707 (N.D.Ill.1976) (three-judge court), cannot be so explained, it appears to rest on an erroneous interpretation of the Supreme Court's decision in Gibson. Clark cites Gibson as support for the statement that administrative proceedings are not competent to resolve federal issues, and therefore are necessarily inadequate under Younger. Id. Yet Gibson did not hold that all administrative hearings are incompetent to deal with federal issues; indeed, it suggested that deference to some administrative proceedings might be appropriate. Gibson merely held that abstention was not appropriate because the state administrative proceeding in question in that case was institutionally biased. 411 U.S. at 576-79, 93 S.Ct. at 1696-98.
 
 
 [10]
 Williams argues that because she is attacking the manner in which the tenure system is being applied to her, rather than attacking that system as facially invalid, the state's interest in providing education, or even in resolving tenure disputes, was in no way implicated by her request for an injunction against further prosecution of the tenure charges. See Appellant's Brief at 24-25. We find no merit to that argument. An injunction by a federal court commanding state and local officials to cease action on a tenure charge against a public school teacher cannot have other than a disruptive impact on the state's ability to ensure a competent and qualified body of teachers
 
 
 [11]
 The analysis in Rite Aid Corp. v. Board of Pharmacy, 421 F.Supp. 1161, 1166-69 (D.N.J.1976) (three-judge court), appeal dismissed, 430 U.S. 951, 97 S.Ct. 1594, 51 L.Ed.2d 801 (1977), is consistent with our analysis here, even though there the court did not abstain. In Rite Aid, the court declined to abstain in the context of an action challenging the licensing procedures of pharmacies. The court, after observing that all state proceedings had been concluded, held that the state's interest in "a routine, garden variety state agency administrative proceeding" which was not "quasi-criminal" or equivalent to a "quasi-criminal" proceeding, and which did not implicate a strong state interest, was insufficient to warrant deference under Younger. Id. at 1167. Thus the scope of Younger abstention outlined in Rite Aid is explained by at least three circumstances present in that case but absent here. First, at the time Rite Aid was decided, it was governed by the stricter test of Huffman v. Pursue. See id. at 1166-67. Second, the court expressly found that no strong or compelling state interest was involved. Id. at 1167-68. Third, no state proceeding was pending to which the Rite Aid court could defer. Id. at 1167 n.13; see Kennecott Corp. v. Smith, 637 F.2d 181, 185-86 (3d Cir. 1980)
 
 
 [12]
 The one exception to the requirement that the pending state proceeding be state-initiated is where the federal plaintiff seeks to enjoin exercise of the state judiciary's contempt power. See Johnson v. Kelly, 583 F.2d at 1248-49; Juidice v. Vail, supra
 
 
 [13]
 Williams' argument, moreover, that municipalities and other local entities are sharply distinguished from states for purposes of sovereign immunity and liability under § 1983, see Appellant's Brief at 25-26, is simply beside the point. The issue here is the weight of, and the respect to be accorded, the state's interest
 
 
 [14]
 Williams has also argued that this case falls within the "bad faith" exception to Younger abstention, claiming that "(g)overnmental actions in retaliation for exercise of First Amendment rights necessarily involve bad faith and harassment." Appellant's Brief at 48. This argument rests on an erroneous reading of an exception to Younger. For the district court to find "bad faith," Williams would have had to allege something akin to a series of prosecutions brought in bad faith "with(out) any expectation of securing a valid conviction;" or a prosecution brought under a statute "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." Younger v. Harris, supra, 401 U.S. at 53-54, 91 S.Ct. at 754-755; Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Williams' complaint makes no such allegations, as the district court pointed out, and accordingly we find no error in the district court's rejection of her argument. See Grandco Corp. v. Rochford, supra, 536 F.2d at 203; Rosko v. Pagano, supra, 466 F.Supp. at 1371
 
 
 [15]
 In abstention under Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), on the other hand, rather than dismiss the complaint, the district court retains jurisdiction in order to await state court resolution of issues of state law which may render a decision on the federal claims unnecessary. See Gibson v. Berryhill, 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973). See generally 17 C. Wright, A. Miller, and E. Cooper, supra, § 4243
 Of course, one approach to such cases would be sharply to distinguish among the various types of abstention. Thus, in Pullman abstention, retention of jurisdiction is the proper disposition, whereas in Younger abstention dismissal is the proper disposition once the decision to abstain has been reached. See also Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (where federal court abstains in order to avoid disrupting an important scheme of administrative regulation by the state, dismissal is proper); 17 C. Wright, A. Miller, and E. Cooper, supra, § 4245. We do not believe, however, that there are several categories of abstention having nothing to do with one another. All the doctrines of abstention have a common underlying purpose: to ensure the proper relationship between the state and the federal judiciary. The decision, in any given case in which abstention is ordered, whether to dismiss the action, or to retain jurisdiction over it and stay the federal proceedings, should be based on a consideration of what is appropriate to the circumstances of that case, and not simply on the label attached to the abstention. Here, such a consideration leads us to conclude that a stay of the federal action would have been the proper course for the district court to have taken.
 
 
 [16]
 Williams asserts, and the Board agrees, that a two-year statute of limitations governs her federal cause of action. She argues that by the time she is able to return to federal court, the statute of limitations may have run and that she will thereby be precluded from obtaining further relief in federal court. In light of our holding, we need not pass on this issue. If, as we hold, the district court must retain jurisdiction, there can be no possibility of a statute of limitations bar to Williams' claim, other than as may have existed at the time her complaint was filed
 
 
 [17]
 We have carefully considered the recent Supreme Court decision in Parratt v. Taylor, --- U.S. ----, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). That decision, however, in no way alters our analysis or result
 
 
 [18]
 At oral argument we requested that supplementary submissions be made by counsel reflecting the then current status of the state proceedings. When we received this information, we observed that the constituency of the Board has apparently changed since the complaint was filed and that, insofar as the members of the Board were named as defendants in their official capacity as well as individually, it may be that some restructuring of the complaint may be desired on remand. See Fed.R.Civ.P. 25(d); F.R.App.P. 43(c). As with all other proceedings on remand, this, of course, is for the district court to deal with in the first instance