Folmar et al., Appellants, *v.* Elliot Coal
Mining Company, Inc.

Argued April 24, 1970.   Before BELL, C. J., COHEN,
EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*F. Cortez Bell, Sr.,* with him *Bell, Silberblatt & Swoope,* for appellants.

*John R. Miller,* with him *David L. Baird,* and *Miller, Kistler, Lee & Campbell,* and *Baird, McCamley & Miller,* for appellee.

OPINION BY MR. JUSTICE POMEROY, January 25, 1971:

These are suits in trespass to recover damages for injury to plaintiffs' property allegedly caused by air pollution attributable to defendant's operation of its coal-cleaning plant.[1] The trial court by its verdict found for the defendant in both cases and, as provided by Pa. R. C. P. Rule 1048, supported its verdict with findings of fact and conclusions of law. Plaintiffs' ex-

---

[1] The present suits were commenced as equity actions for the abatement of a nuisance and for damages limited to the cost of restoring and cleaning the plaintiffs' properties. After trial before the chancellor but before a decree was rendered, this Court's decision in *Commonwealth v. Glen Alden Corp.*, 418 Pa. 57, 210 A. 2d 256 (1965) was entered. In that case the Court held, construing the Air Pollution Act of 1960, that equity was without jurisdiction where the provisions of that act were applicable. It was then stipulated by the parties to the present cases that they should be certified to the law side of the court and proceeded with as actions in trespass to be heard by the court without a jury. The testimony already taken was deemed applicable to the law actions, and additional evidence was also received. Before judgment the legisla-

ceptions to the findings and conclusions were overruled, and these appeals followed.[2]

The findings of fact, broadly stated, were as follows: The two appellants purchased their homes in 1931 and 1959, respectively. Both properties are located within 1500 feet of appellee's coal processing plant, which consists of crushers, conveyors, vibrating equipment, screens and picking tables. The plant has been operated by the appellee and its predecessor since 1948, and the appellants realized at the times of their respective purchases that the properties were located in an area generally used for industrial and coal mining purposes. As a result of complaints, appellee installed in 1962 an air cleaner, thermodryer and coal washing unit, and soon thereafter a dust collector and covered coal conveyor. Notwithstanding these measures, the appellee's coal cleaning operation has contributed to air pollution affecting the properties of appellants from 1962 to the time of trial.[3] The appellee has employed specialists in the field of fuel and combustion air pollution who have conducted numerous tests. They have recommend-

---

ture, responding to *Glen Alden, supra,* amended the Air Pollution Control Act so as to preserve equitable jurisdiction to abate private or public nuisances. Act of June 12, 1968, P. L.    , §8, 35 P.S. §4012.1 (Supp. 1970). The lower court nevertheless, and without objection, continued to treat the cases " as an alleged trespassory invasion seeking damages in law."

[2] The parties stipulated, with the approval of the lower court, that they accept all of the trial judge's findings of fact as correct and supported by the evidence. The transcript of testimony has therefore not been submitted for our review. We did, however, remand for supplementation of the record in several respects, including a certificate of the amount in controversy prepared in conformity with our Rule 61. This supplementary material was furnished on October 1, 1970.

[3] Finding of fact number 27 noted that one other factor contributing to appellants' pollution problem is the coal dropped by passing trucks, which coal is subsequently pulverized by passing traffic.

ed the installation of a certain type of wet scrubber on the thermodryer as a means of reducing emission of dust from that source. This equipment will cost $20,000 to $30,000. The appellee has adopted the recommendation and "intends to either discontinue using the thermodryer or install the wet scrubber." "With the installation of the wet scrubber, defendant company will have done everything now known and economically feasible to eliminate any source of air pollution." The cleaning plant is an essential part of appellee's mining operations, and appellee is not in default as to compliance with any requirements of the Air Pollution Control Commission.

The trial court concluded, as a matter of law, that the invasion of appellants' properties by coal dust from appellee's plant has not been substantial,[4] nor was it intentional or unreasonable; neither has the appellee been negligent in conducting its operations.[5]

Both the lower court and the parties have accepted §822 of the *Restatement of Torts* as the law governing this case. Our Court adopted that section in *Waschak*

---

[4] The finding as to substantiality, though below labeled a conclusion of law, is perhaps technically a finding of fact, since it is solely concerned with the quantity and quality of precipitation. The court did find as a fact that the invasion reduced the pleasant use and enjoyment of appellants' properties, and this is probably the "discomfort and annoyance" not amounting to substantial invasion which the court notes in its conclusions of law. Appellee deduces that these findings coalesce to produce a finding of fact that the invasion was not substantial. Based upon the abbreviated record presented and without opportunity to review the complete testimony, this seems to be a reasonable reading of the adjudication. In any event, the appellants are not bound by the lower court's finding of nonsubstantiality, since they have excepted to it as a conclusion of law.

[5] The appellant did not except to the lower court's conclusion that the appellee had not been negligent in conducting its operations and does not contest that conclusion on this appeal.

*v. Moffat,* 379 Pa. 441, 109 A. 2d 310 (1954), and it is reproduced in full in the margin.[6]  In essence, it provides that the owner of private property is entitled to damages due to injury occurring from a nontrespassory invasion of his premises if the defendant's conduct is the legal cause of the invasion and the invasion is (a) substantial, and (b) either (i) intentional and unreasonable, or (ii) unintentional, but negligent, reckless or ultrahazardous conduct.  The appellants have not been able to satisfy the requirements of that section of the *Restatement.*

The primary question, as we view it, is whether the trial court was correct in concluding that the invasion of appellants' properties was not unreasonable when the condition could be cured by the installation of equipment which had not, at the time of trial, been installed.  An actor's conduct is unreasonable under §822 of the *Restatement,* unless the utility of his conduct outweighs the gravity of the harm.  *Restatement of Torts,* §826 (1939).  Our Court has stated that the actor's conduct lacks utility if it is economically and technically possible to correct the harm and such steps are not taken.  *Burr v. Eidemiller,* 386 Pa. 416, 126 A. 2d 403 (1956); see *Herring v. H. W. Walker Co.,* 409 Pa. 126, 133, 185 A. 2d 565 (1962).  The limited record before us does not disclose when the recommendations as to the wet scrubber were made or when this device

---

[6] Section 822 of the *Restatement of Torts* provides: "The actor is liable in an action for damages for a non-trespassory invasion of another's interest in the private use and enjoyment of land if, (a) the other has property rights and privileges in respect to the use or enjoyment interfered with; and (b) the invasion is *substantial;* and (c) the actor's conduct is a legal cause of the invasion; and (d) the invasion is either (i) *intentional* and *unreasonable;* or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless or ultrahazardous conduct." (Emphasis ours.)

became technically and economically feasible, or how long before trial the appellee had decided that it would either make the installation or discontinue its thermodryer. Since such facts were requisite to show that an invasion was unreasonable and they were not included in the findings of fact by the trial court, it can only be concluded that the appellants did not carry their burden of proof. It is clear, however, that the learned trial judge had before him sufficient facts to justify the legal conclusion that the invasion was not unreasonable: the major improvements in 1962 and the continuing attention to the problem thereafter, culminating in a decision to employ apparatus whereby the appellee "will have done everything now known and economically feasible to eliminate any source of air pollution."

Since, as indicated above, the posture of this case at the time of decision was an action at law for damages tried without a jury, the court was obligated to render a verdict for either the plaintiffs or defendant; the injunctive or conditional forms of equity decrees were not available. It is clear that the verdict for the appellee was based in part, at least, on its announced intention at trial to install a wet scrubber or abandon the thermodryer. Because the verdict was based in part on an expectation, however, the judgment thereon is not to be considered *res judicata* as to any damage subsequent to the date of the verdict in the event the appellee has not subsequently fulfilled that expectation or discontinued what otherwise might be considered an unreasonable invasion of the appellants' property.

Judgment affirmed.

Mr. Justice JONES took no part in the consideration or decision of this case.

Mr. Justice COHEN took no part in the decision of this case.