755 F.2d 338
 HARRIS, Martin a/k/a Carmichael, Arthur, Prison Number
80-16203, Anthony, Albert--# 81-16129, McCrea, Orlando X.--#
81-14560, Moore, Andre--# T-3223, Hansford, Frank L., Jr.--#
T-3219 T-3765, Glenn, Tyrone--# 80-11017, Royster, Carlos--#
81-13076, Abdullah, Amin--# 82-00012, Muhammad, Khalid
Allah--# 80-08190, Furtick, Arnold--# 80-16429 on behalf of
themselves and all other persons similarly situated, Appellants,
v.
Irene PERNSLEY, individually and in her official capacity as
Welfare Commissioner of the City of Philadelphia, Royal L.
Sims, Rev. Albert Campbell, Labora Bennett, James Barber,
Mark Mendel, Donald Padova, each individually and in his or
her official capacity as a member of the Board of Trustees
of the Philadelphia Prison System, David S. Owens,
individually and in his official capacity as Superintendent
of the Philadelphia Prison System, John Daughen,
individually and in his official capacity as Warden of
Holmesburg Prison, Rodney D. Johnson, individually and in
his official capacity as Managing Director of the City of
Philadelphia, Hon. William J. Green, individually and in his
official capacity as Mayor of the City of Philadelphia, City
of Philadelphia, Jay C. Waldman, individually and in his
official capacity as General Counsel for the Commonwealth of
Pennsylvania, and Ronald J. Marks, individually and in his
official capacity as Commissioner of the Pennsylvania Bureau
of Corrections, Appellees.
 No. 84-1039.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 10, 1984.
Decided Feb. 22, 1985.
 
 David Richman (argued), Richard M. Bernstein, Philip H. Lebowitz, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellants.
 Leroy S. Zimmerman, Atty. Gen., Carl Vaccaro (argued), Deputy Atty. Gen., Philadelphia, Pa., for appellee Marks.
 John P. Krill, Deputy General Counsel, Comm. of Pa., Harrisburg, Pa., for appellee Waldman.
 Richard J. Gold (argued), Divisional Deputy City Sol., August V. Sellitto, Asst. City Sol., Philadelphia, Pa., for appellees Pernsley, Simms, Campbell, Bennett, Barber, Mendel, Padova, Owens, Daughen, Johnson, Green & the City of Philadelphia.
 Before GIBBONS and GARTH, Circuit Judges, and TEITELBAUM, District Judge.*
 OPINION OF THE COURT
 GIBBONS, Circuit Judge:
 
 
 1
 The plaintiffs, inmates of Philadelphia's Holmesburg Prison, appeal from a judgment dismissing their amended class action complaint, which seeks injunctive relief against that institution as well as money damages for the conditions of confinement in same. The plaintiffs originally filed a pro se complaint which was later amended after the appointment of counsel. The trial court dismissed at the pleading stage because of the possibility of relief under the terms of a judgment rendered in a case pending in the Court of Common Pleas of Philadelphia County. We reverse.
 
 I.
 Proceedings in the Trial Court
 
 2
 In February of 1971 five inmates of the Philadelphia Prison System brought on behalf of themselves and others a class action in the Court of Common Pleas seeking equitable relief on federal constitutional grounds. That court found the Philadelphia Prison System to be operating in violation of the eighth amendment prohibition against cruel and unusual punishment. In August of 1973 the Commonwealth Court affirmed that holding but modified the Common Pleas Court order insofar as the earlier order required the appointment of a master to prepare a report and recommendation for the framing of a final decree. Hendrick v. Jackson, 10 Pa.Commw. 392, 309 A.2d 187 (1973). The Supreme Court of Pennsylvania, in July of 1974, reinstated the provision in the decree providing for the appointment of a master. Jackson v. Hendrick, 457 Pa. 405, 321 A.2d 603 (1974). In March of 1976 the Common Pleas Court issued its first remedial order, which, inter alia, established a maximum inmate capacity for the Philadelphia prisons. That limit on inmate capacity, as well as other contested features of the remedial order, was affirmed per curiam by the Commonwealth Court in October of 1977. Hendrick v. Jackson, No. 1385 C.D.1976 (Pa.Commw. Oct. 17, 1977). The Common Pleas Court retained jurisdiction over the action. Between February 4, 1977 and June 29, 1983 the parties agreed upon a series of consent decrees dealing with various methods for alleviating the overcrowded conditions of the Philadelphia prisons. The Common Pleas class action did not seek damages, and the remedial decrees made no provision for individual relief for any inmate. The defendants in that action are officials of Philadelphia, not of the Commonwealth. On at least one occasion those Philadelphia defendants were held in contempt, and fined, for failure to comply with various aspects of the consent decree.
 
 
 3
 In April of 1982 the plaintiffs in the instant case, none of whom were incarcerated before April 1980, filed a pro se complaint in federal district court seeking damages and injunctive relief for themselves and for a class consisting of all persons who have been inmates of Holmesburg since that date, and on behalf of future Holmesburg inmates. The amended complaint alleges that since April 30, 1982 members of the class have been deprived of rights guaranteed to them by the eighth and fourteenth amendments, in violation of 42 U.S.C. Sec. 1983 (1982). The amended complaint acknowledges the provisions of the several litigated and consent decrees which have been entered by the Common Pleas Court, but alleges that those decrees have never been obeyed. Plaintiffs allege, for example, that the Common Pleas decree fixes the maximum capacity of Holmesburg at approximately 700 inmates, but that the current population exceeds 1300. Plaintiffs allege that, as a result of such overcrowding, they have been subjected to and injured by a long list of hazards and deprivations, and have been subject to physical and psychological injury from violent attacks, sexual assault, and threats of physical violence by other inmates. They allege further that each of the defendants, with full knowledge of the existence of unconstitutional conditions of confinement at Holmesburg, has acted or failed to act in such a way so as to exacerbate the overcrowding and resulting conditions at that institution. The defendants include the Philadelphia officials directly responsible for Holmesburg's operation, as well as two state officials, Jay C. Waldman, General Counsel for the Commonwealth and Ronald J. Marks, Commissioner of the Pennsylvania Bureau of Corrections. The Commonwealth defendants are alleged to be responsible for establishing standards for county jails and prisons, and to have made decisions respecting classification of prisoners which resulted in the overcrowding at Holmesburg.
 
 
 4
 The Philadelphia and the Commonwealth defendants moved to dismiss under Fed.R.Civ.P. 12(b)(6).[1] The trial court granted these motions. The court ruled that as against the Philadelphia defendants both the claims for injunctive relief and for money damages were barred by res judicata, having been merged in and therefore barred by the decrees of the Court of Common Pleas. As to the Commonwealth defendants, who were not parties to the Common Pleas action, the court ruled that all claims against them were barred both by the eleventh amendment and by qualified official immunity. Alternatively, the court ruled that because of the pendency of the state court action it should abstain from adjudicating any aspect of the case and, accordingly, dismissed it entirely.
 
 II.
 Res Judicata
 
 5
 As we noted above, the Common Pleas Court action did not litigate any claims for money damages. Nor did it litigate events occurring after April 30, 1982. Thus the Philadelphia defendants do not urge that the plaintiffs are collaterally estopped either factually or legally--barred by issue preclusion--because of any determination made by the Court of Common Pleas. See Restatement (Second) of Judgments Sec. 27 (1982). Indeed, quite the opposite is the case. The present plaintiffs, who were not inmates of Holmesburg at the time of the 1972 litigation, will contend, if the case goes to trial, that the Philadelphia defendants are collaterally estopped from attempting to defend the constitutionality of conditions of confinement at Holmesburg.[2] See Restatement (Second) of Judgments Sec. 27 (1982).
 
 
 6
 What the Philadelphia defendants do urge, however, is that the named plaintiffs in this action and the class members whom they represent are barred by res judicata--claim preclusion--from asserting any claim which might have been asserted in the 1971 Common Pleas case. See Restatement (Second) of Judgments Secs. 24, 41 (1982).
 
 
 7
 When determining the judgment preclusion effect of a judgment rendered by a state court, we are referred to the law of the rendering state. 28 U.S.C. Sec. 1738 (1982); Migra v. Warren City School Dist. Bd. of Educ., --- U.S. ----, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). But while federal courts are directed by statute to look to state law for determination of the judgment preclusive effects of state judgments, state law itself is subject to the limitations of due process. Thus there are due process limitations upon the authority of states to attempt to bind by judgment non-participants in the underlying state lawsuit. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 176, 94 S.Ct. 2140, 2151, 40 L.Ed.2d 732 (1974); Mullane v. Central Hanover Tr. Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). The position of the Philadelphia defendants is that the 1971 Common Pleas action forever bars claims for injunctive relief and damages, not only by claimants who were inmates in 1971, but also by inmates who did not become so until more than a decade later.
 
 
 8
 We need not decide whether Pennsylvania law would violate due process should it purport to go that far in applying claim preclusion. Plainly Pennsylvania law is not so extreme.
 
 
 9
 Pennsylvania applies res judicata--claim preclusion--only after a final judgment on the merits. Bearoff v. Bearoff Bros., Inc., 458 Pa. 494, 327 A.2d 72 (1974). Even after judgment, "[i]t is well settled that for the doctrine of res judicata to prevail there must be a concurrence of four conditions: 1) identity of issues, 2) identity of causes of action, 3) identity of persons and parties to the action, and 4) identity of the quality or capacity of the parties suing or sued." Safeguard Mutual Ins. Co. v. Williams, 463 Pa. 567, 345 A.2d 664, 668 (1975). We assume arguendo, that despite the retention of jurisdiction by the Common Pleas Court, its liability determination would be treated by Pennsylvania as a final judgment on the merits. It must nevertheless satisfy the conjunctive four factor test quoted above. That test is not satisfied by the Common Pleas Court judgment.
 
 
 10
 There is no identity of causes of action between the plaintiffs in the 1971 lawsuit and this one. No member of the present class even had a cause of action, either for injunctive relief or for damages, growing out of the conditions in Holmesburg in 1971, for no such class member was subjected to those conditions. A Pennsylvania judgment is not conclusive on matters which by reason of the nature of the case could not have been adjudicated. E.g., Folmar v. Elliot Coal Mining Co., 441 Pa. 592, 272 A.2d 910 (1971); Salay v. Braun, 427 Pa. 480, 235 A.2d 368 (1967); Maslo Mfg. Corp. v. Proctor Elec. Co., 376 Pa. 553, 103 A.2d 743, cert. denied, 348 U.S. 822, 75 S.Ct. 36, 99 L.Ed. 648 (1954). Indeed it could not have been anticipated in 1971 that the class members now before us would ever arrive in Holmesburg. Moreover there was no time at which notice could have been given to them so as to afford current class members an opportunity to assert the claims now claimed by the Philadelphia defendants to be barred. See Greenfield v. Villager Indus., Inc., 483 F.2d 824, 832 (3d Cir.1973); Restatement (Second) of Judgments Sec. 42(1)(a) (1981). No steps were taken in the Common Pleas Court action to impose on any party in that action the responsibility for discharging fiduciary obligations to unknown potential future inmates. Thus there is no identity of persons or parties between the present class members and the named plaintiffs in the Common Pleas Court action. The Philadelphia defendants have not referred us to any Pennsylvania case suggesting that the Courts of the Commonwealth would apply claim preclusion, on the basis of a 1971 lawsuit, against non-parties, who could not have been notified of its pendency, so as to bar claims for injunctive relief and damages for events occurring over ten years later.
 
 
 11
 The trial court erred, therefore, in holding that res judicata--claim preclusion--bars the instant action against the Philadelphia defendants.
 
 III.
 Eleventh Amendment
 
 12
 The Commonwealth defendants, Waldman and Marks, contend that the action against them for either injunctive relief or damages is barred by the eleventh amendment. The claims asserted against them are predicated upon alleged violations of the Constitution. They are charged with individual acts taken under color of state law. No payments are sought from the Commonwealth Treasury. Compare Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). No relief is sought against them under state law. Compare Pennhurst State School & Hospital v. Halderman, --- U.S. ----, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). They remain subject to actions for injunctive relief, Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and to actions for money damages, except to the extent that they may enjoy official immunity.
 
 IV.
 Official Immunity
 
 13
 Plaintiffs claim Waldman and Marks made decisions which allegedly contributed to the unconstitutional conditions at Holmesburg. Waldman and Marks are not parties to the action in the Court of Common Pleas, but, according to plaintiffs, have been responsible in part for the failure of that court to achieve compliance with its decree. The trial court accepted their argument that the official immunity holding in Harlow v. Fitzgerald, 457 U.S. 800, 815-19, 102 S.Ct. 2727, 2737-39, 73 L.Ed.2d 306 (1981) barred the plaintiffs' claim for monetary relief because the complaint did "not contain allegations of sufficient specificity to defeat their qualified immunity as state officials with discretionary powers." App. 18.
 
 
 14
 The qualified immunity defense only applies, of course, to claims for money damages. The trial court correctly so assumed and relied on different grounds for dismissing the action for injunctive relief against Waldman and Marks. Initially we note that qualified immunity is an affirmative defense. There is no pleading requirement that a plaintiff must anticipate such a defense. Marks and Waldman did not move for summary judgment; thus there is no record on which to judge whether they would be able to place themselves within the doctrine of official immunity.
 
 
 15
 Judging the complaint by the standard appropriate under Rule 12(b)(6), we must assume that the plaintiffs could prove that Waldman and Marks, while knowing that the overcrowded conditions at Holmesburg had already been adjudicated to be violations of the Constitution, took steps under color of state law which increased the inmate population and aggravated the violations. The acts complained of and the resulting consequences are set out quite specifically. A Rule 12(b)(6) dismissal of the complaint against Waldman and Marks for money damages, therefore, was an error of law.
 
 V.
 Abstention
 
 16
 As an alternative justification for dismissing the complaint the trial court relied on what it referred to as "[t]he doctrine of abstention [which] permits a federal court in its discretion to decline or postpone the exercise of its jurisdiction." App. 14. Identifying four categories of cases in which federal courts may decline to exercise jurisdiction, the court held that three were inapplicable, but that the fourth did apply.
 
 
 17
 First, the trial court noted that under R.R. Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) federal courts may postpone adjudication of a federal constitutional issue which may be mooted or presented in a different posture by a state court determination of a state law issue. This ground for declining to exercise jurisdiction was rejected because "there is no pertinent state law which would preclude the need to decide the constitutional issue." App. 14. The defendants point to no potentially preclusive state law issue. Thus we agree with the district court that Pullman abstention would have been inappropriate.
 
 
 18
 Next the court considered whether the exercise of federal court jurisdiction would substantially interfere with a state regulatory scheme dealing with matters of significant importance to the state. See Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); Baltimore Bank for Cooperatives v. Farmers Cheese Coop., 583 F.2d 104, 109 (3d Cir.1978). The only regulatory scheme to which the defendants could point was the decree imposed, on federal constitutional grounds, by the Court of Common Pleas. The Court rejected a Burford -type abstention, noting that "[t]he administration of the state prison system is of significant importance to the state but there are no state claims made in this case; the court action in Jackson was premised on federal not state constitutional rights." App. 15 (footnote omitted). No special competence is claimed for the Court of Common Pleas in the administration of decrees aimed at vindicating violations of federal constitutional rights. Thus we agree that a Burford dismissal would have been inappropriate.
 
 
 19
 The court also considered whether it should decline to exercise jurisdiction on the ground that it would be called on to restrain the enforcement of a state court proceeding in which the state had a significant law enforcement interest. See Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Noting that "[t]here are no state criminal proceedings or nuisance proceedings antecedent to a criminal proceeding involved here," App. 15, it declined to dismiss on the authority of Younger v. Harris. The trial court's holding in this respect complies with the consistent holdings of this court that "where the pending state proceeding is a privately-initiated one, the state's interest in that proceeding is not strong enough to merit Younger abstention, for it is no greater than its interest in any other litigation that takes place in its courts." Williams v. Red Bank Bd. of Educ., 662 F.2d 1008, 1019 (3d Cir.1981); See Johnson v. Kelly, 583 F.2d 1242, 1249 (3d Cir.1978) (abstention improper in a challenge to constitutionality of tax sales of property when state action to quiet title was brought by private citizens); New Jersey Educ. Ass'n v. Burke, 579 F.2d 764, 767 (3d Cir.1978) (abstention improper when private plaintiffs sued state agency in state court). Since the municipal and state officials are defendants in the state proceeding resisting the enforcement of federal constitutional rights, rather than plaintiffs or prosecutors seeking vindication of state law enforcement policies, the trial court did not err in declining to dismiss on the authority of Younger v. Harris and its progeny.[3]
 
 
 20
 Finally, citing Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the trial court identified a fourth category of cases which gave it discretion to decline to exercise jurisdiction for reasons of wise judicial administration when a state court had concurrent jurisdiction over a pending action. App. 15. See also Arizona v. San Carlos Apache Tribe of Arizona, 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983). The court concluded that, in the interest of wise judicial administration, all claims against all parties should be dismissed.
 
 
 21
 Before addressing the trial court's treatment of Colorado River, we note the context in which the ruling was made. We must take as true the allegations of the complaint that conditions in Holmesburg, in 1982, violated the eighth and fourteenth amendments. We must take as true the allegations that a decade-old decree, which put a cap on inmate population, remains unenforced. Moreover, the litigation pending in the Court of Common Pleas is not fully parallel to that brought in the district court, for no claim for money damages was asserted in the state court case. Nor will the federal court case involve parallel litigation even over liability for injunctive relief, since the liability phase of the state court case has long since been concluded. Yet, despite that liability determination, the complaint alleges that inmates placed in Holmesburg since April 30, 1982 continue to suffer injury from ongoing violations of the eighth and fourteenth amendments.
 
 
 22
 The basic rule has always been that the pendency of a state court proceeding is not a reason for a federal court to decline to exercise jurisdiction established by Congress. McClellan v. Carland, 217 U.S. 268, 281-82, 30 S.Ct. 501, 504, 54 L.Ed. 762 (1910). Moreover a state court having jurisdiction over a class action may not enjoin a parallel class action in a federal court. Donovan v. City of Dallas, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964). These holdings recognize the deference which federal courts owe to the legislative determination by Congress that plaintiffs have been given a choice of forums. See Meredith v. Winter Haven, 320 U.S. 228, 236, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943).
 
 
 23
 The Supreme Court has recognized a narrow exception to the basic rule, where it has been able to identify, in other Congressional legislation, a tempering of the policy of enforcing the plaintiff's choice of a federal forum in favor of a policy of avoiding duplicative and inconvenient litigation. In Colorado River Water Conservation District v. United States, supra, the Court found such a modification in the McCarren Amendment, c. 651, Title II, Sec. 208(a)-(c), 66 Stat. 560 (1952) (codified as 43 U.S.C. Sec. 666 (1982)), in which Congress consented to suit in state courts against the United States when the United States was asserting claims for water rights under a state water rights scheme. The Court held that, in light of the McCarren amendments, deference to a parallel state proceeding was appropriate, since such deference would a) provide a single court with exclusive jurisdiction over interdependent water rights, b) avoid piecemeal litigation, and c) provide for resort to a more convenient forum, one which had first assumed jurisdiction. Even while announcing this narrow parallel litigation exception to the basic rule, however, the Court took pains to note "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Id. 424 U.S. at 817, 96 S.Ct. at 1246, citing England v. Medical Examiners, 375 U.S. 411, 415, 84 S.Ct. 461, 464, 11 L.Ed.2d 440 (1964). Under Colorado River a district court may dismiss only upon "a carefully considered judgment" which "[o]nly the clearest of justifications will warrant...." 424 U.S. at 818-19, 96 S.Ct. at 1246-47.
 
 
 24
 The teaching of the Colorado River case is that only "exceptional" circumstances will permit a federal court to refrain from exercising its jurisdiction for reasons of wise judicial administration due to the presence of a concurrent state court proceeding.
 
 
 25
 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 4247 (1978) p. 519.
 
 
 26
 Recently the Supreme Court has reconfirmed that the parallel litigation exception to the basic rule of McClellan v. Carland is a narrow one requiring the clearest justification. In Moses H. Cone Memorial Hospital v. Mercury Construction Corporation, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Court held that a diversity action to compel arbitration should not have been dismissed in favor of a state court declaratory judgment action in which the federal plaintiff was a defendant. There was no assumption by the state court of control over a res or property, and no contention that the federal forum was less convenient to the litigants. Id. at 939. Moreover "avoidance of piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums--far from supporting the stay, actually counsel against it." Id. Addressing a factor not considered in Colorado River, the court held that the existence of a federal law rule of decision, which either court must apply, was a major reason for exercising federal jurisdiction. Justice Brennan wrote:
 
 
 27
 [w]e emphasize that our task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under Colorado River to justify the surrender of that jurisdiction. Although in some rare circumstances the presence of state-law issues may weigh in favor of that surrender, ... the presence of federal-law issues must always be a major consideration weighing against surrender.
 
 
 28
 103 S.Ct. at 942.
 
 
 29
 The test for application of the parallel litigation exception set forth in Colorado River and reiterated in Moses H. Cone cannot be satisfied in this instance. The cases are not truly parallel since the federal court plaintiffs seek money damages while the state court plaintiffs did not. The liability phase of the state court case is long concluded, and thus parallel litigation on liability even for injunctive relief is not an issue. Indeed the plaintiffs may be able to avoid some steps in the federal court proceeding by offensive collateral estoppel use of the state court judgment. The state court is not a more convenient forum since both courts are located in the same city, equally accessible to Holmesburg. No federal statute suggests a congressional policy tempering in any way the basic policy of affording plaintiffs a choice of forum. Finally, of special significance in light of Moses H. Cone, the law applied in either forum is federal law. The mere pendency of a state court injunction predicated on federal law, which according to the complaint has not produced an alleviation of ongoing violations of the constitution, is not such an exceptional circumstance as to relieve the federal courts of "the virtually unflagging obligation ... to exercise the jurisdiction given them." 424 U.S. at 817, 96 S.Ct. at 1246. Thus we cannot affirm the dismissal of the complaint on the ground relied on by the trial court.
 
 VI.
 Conclusion
 
 30
 The judgment dismissing the complaint on the defendants' Rule 12(b)(6) motion will be reversed, and the case remanded for further proceedings.
 
 GARTH, Circuit Judge, dissenting:
 
 31
 The majority, in virtual defiance of Supreme Court teachings that federal courts should not intrude in vital state interests unless federal constitutional concerns are being violated or ignored--neither of which is the case here--has nevertheless held that a federal court is to manage Philadelphia's jails. It so holds despite admitted record evidence (1) that the Pennsylvania courts have been and are exercising strict supervision over Philadelphia's prison system and conditions and (2) that the Pennsylvania courts are vindicating all federal constitutional rights by appropriate state court actions.
 
 
 32
 I cannot agree with the majority that the state's interests, which are so very vital in the area of prison administration, must be subordinated to federal court determinations even while the Commonwealth is expending every effort to correct the conditions that have been challenged. I therefore dissent.
 
 I.
 
 33
 My disagreement with the majority is a basic one. I do not believe that Supreme Court teachings, comity, or reason support a federal court's intrusion into a state's administration of its prison system when the state courts have been, and presently are, exercising supervision over these institutions and are doing so in accordance with both state and federal constitutional requirements.
 
 
 34
 The pleadings clearly reveal that since March 15, 1976 the Court of Common Pleas has not only imposed corrective measures on the Commonwealth's prison administration, but has done so continuously through various consent decrees. As recently as June 22, 1984, additional orders have been entered by the state courts. For a federal court to step in and ignore the state's own corrective proceedings is, so far as I am concerned, as inappropriate and wrong as it is for a federal court to run state hospitals, see Pennhurst State School & Hospital v. Halderman, --- U.S. ----, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), or schools, see Williams v. Red Bank Board of Education, 662 F.2d 1008 (3d Cir.1981). This is so particularly where the state courts have been strictly enforcing federal constitutional mandates. The majority opinion attempts to excuse and explain the federal court's role by focussing on the money damages which these plaintiffs seek. Maj.Op. typescript at 18. I suggest this is a makeweight argument that cannot govern the more important and the more sensitive issue of federal and state comity presented by the circumstances of this case.
 
 II.
 
 35
 In February, 1971, five prisoners in the Philadelphia prison system brought a class action in the Court of Common Pleas in Philadelphia County, on behalf of themselves and all others confined in Philadelphia prisons, seeking injunctive relief from prison overcrowding in violation of both state and federal constitutional provisions. The Court of Common Pleas found violations of both the Pennsylvania and United States Constitutions and entered a decree which became final on June 7, 1972. This decree was upheld on appeal. Jackson v. Hendrick, 457 Pa. 405, 321 A.2d 603 (1974). The Court of Common Pleas retained jurisdiction over the remedial stage of the case, as it has until this day. The first remedial order was issued on March 15, 1976, establishing maximum prison population limits.
 
 
 36
 Since then, the parties have entered a series of consent decrees governing administration of the prisons and designed to alleviate the conditions found violative of the eighth amendment of the United States Constitution and Pennsylvania constitutional provisions. The most recent such remedial order prior to the district court's dismissal of the instant action was issued on June 29, 1983, and directed a plan of prison release in order to relieve overcrowding.[1]
 
 
 37
 The plaintiffs in the instant case filed this action in the federal district court for the Eastern District of Pennsylvania on April 27, 1982, seeking relief under 42 U.S.C. Sec. 1983 from prison conditions in the Philadelphia prison system which are alleged to violate the eighth amendment. Class certification was sought for a "class consisting of all persons who have been inmates of Holmesburg Prison since April 30, 1980, and on behalf of all future inmates of Holmesburg Prison." None of the named plaintiffs were incarcerated before April 30, 1980; thus, none of the plaintiffs were prisoners during the time the 1971 action was initiated in state court. Nevertheless, plaintiffs, in their amended complaint, allege that the entire current plaintiff class is included in the 1971 class.
 
 
 38
 The current class action alleges that conditions in the Philadelphia prison system remain in violation of the eighth amendment, primarily due to continued overcrowding and the prison system's failure to comply with the state court's remedial decrees. Damages and injunctive relief were sought against the City of Philadelphia and various City officials in charge of prison administration. Further, damages and injunctive relief were sought against state officials, Waldman and Marks, for their actions certifying the prisons as suitable for prisoners who were sentenced to maximum terms of greater than six months and less than five years.
 
 
 39
 Both the City and State defendants filed motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court granted these motions to dismiss on several grounds. First, as to the City defendants, it found that the plaintiff class' claims were barred by the doctrine of res judicata, their claims having been merged into the decrees of the Court of Common Pleas. Second, it held that the doctrine of Colorado River[2] abstention was applicable to this case, where resolution of the dispute is primarily committed to the state court. It further decided that such abstention required dismissal of this case. Third, as to the State defendants, the district court found plaintiffs' claims to be barred by both the eleventh amendment protection of state sovereign immunity and qualified official immunity.
 
 
 40
 I agree with so much of the majority opinion that holds that the prisoners' claims are not barred by res judicata. I also agree with the majority's resolution of the qualified official immunity defense asserted by defendants Marks and Waldman, and its holding that the brand of abstention announced in Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) does not apply to this case. I part company with the majority, however, in its holding that Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) does not authorize abstention in this case. Accordingly, I would remand the case to the district court with instructions to abstain from proceedings with this case, while at the same time retaining jurisdiction should any federal claims remain unresolved by the state court's action.
 
 III.
 
 41
 This court has recently approved a form of Younger v. Harris abstention that has the effect of harmonizing both federal and state remedies. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), established a principle of abstention where federal adjudication would disrupt an ongoing state criminal proceeding. In Moore v. Sims, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), the Supreme Court extended Younger abstention to purely civil proceedings, applying the doctrine to bar federal court adjudication of a child custody claim where state court custody proceedings were already in progress. Even though Sims was challenging the procedures used in the state proceedings, the Supreme Court found abstention appropriate:
 
 
 42
 The Younger doctrine, which counsels federal-court abstention when there is a pending state proceeding, reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff.... that policy was first articulated with reference to state criminal proceedings, but as we recognized in Huffman v. Pursue, Ltd., 420 U.S. 592 [95 S.Ct. 1200, 43 L.Ed.2d 482] (1975); the basic concern--that threat to our federal system posed by displacement of state courts by those of the National Government is also fully applicable to civil proceedings in which important state interests are involved.
 
 
 43
 Id. at 423, 99 S.Ct. at 2377.
 
 
 44
 This court then applied Younger abstention to state administrative proceedings in Williams v. Red Bank Board of Education, 662 F.2d 1008, 1009 (3d Cir.1981). We have required that Younger abstention in such civil proceedings be based on the presence of weighty state interests. See Williams at 1017. I can think of no more weighty, vital or intimate state interests than the administration of a state's penological system. Indeed, the Supreme Court has given the federal courts unambiguous instructions to pay great deference to the States' weighty interest in administering their own prison systems. See generally Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Union County Jail Inmates v. DiBuono, 713 F.2d 984 (3d Cir.1983). In light of the Supreme Court's admonitions pertaining to vital state interests, we held in Williams, a case which concerned school disciplinary proceedings, that:
 
 
 45
 [O]ur analysis and our reading of Younger cases impress us that where federal intervention into state administrative proceedings would be substantial and disruptive, and where the state proceedings are adequate to vindicate federal claims and reflect strong and compelling state interests, the district court, pursuant to Younger, should abstain.
 
 
 46
 662 F.2d at 1017.
 
 
 47
 Williams involved a suit brought in federal court by a school teacher seeking an injunction against further state prosecution of an administrative disciplinary proceeding, expungement of the proceeding from her record, and compensatory and punitive damages. In Williams, we upheld so much of the district court's order directing abstention in favor of the pending state administrative proceeding, but we vacated that aspect of its order which dismissed Williams' complaint. Instead we directed the district court to retain jurisdiction pending resolution of the state proceedings in order to provide those remedies, such as constitutional damages, which were available only in the federal action. Recognizing that Williams must seek relief in federal court which was not available to her in State proceedings, we refused to deny a federal court's duty to assume jurisdiction where jurisdiction properly existed. We also recognized, however, that the federal court would find it difficult if not impossible to adjudicate Williams' constitutional claims until after all State proceedings had been finally completed.[3]
 
 
 48
 In the present case, the courts of Pennsylvania have been overseeing the remedies directed to particular prison conditions and have been issuing remedial orders since at least March 15, 1976. They have done so after consideration of prison conditions which were alleged to violate both federal and Pennsylvania constitutions. Thus, the Pennsylvania courts have not only been aware of, but have sought to vindicate, federal concerns. Indeed, the complaint recites that a total of $325,000 in fines has been levied by the court for failure to comply with various corrective provisions of the consent decree which had been entered. The complaint further recites that there have been four additional consent decrees that have been approved by the Court of Common Pleas as late as December 21, 1982. Moreover, as recently as June 29, 1983--more than one year after the present federal action was commenced--the state court entered still another order establishing a plan of prison release to relieve overcrowding. That order was followed by still additional orders entered by the state courts as late as June 22, 1984.
 
 
 49
 I recognize that obiter dictum in prior decisions of this Court has indicated that Younger abstention would ordinarily not obtain where the state proceedings were instituted by a private party rather than by the state as sovereign. See Johnson v. Kelly, 583 F.2d 1242, 1249 (3d Cir.1978); New Jersey Education Association v. Burke, 579 F.2d 764, 767 (3d Cir.1978). Indeed, Williams itself repeats that suggestion, and the majority in this case, relying on that dictum, thereby rejects Younger (Williams ) abstention here.
 
 
 50
 While the statements in Williams, Kelly and Burke may be said to create a presumption against a sufficient state interest in the pending proceedings to invoke Younger abstention where the pending proceedings were privately initiated, none of those cases foreclose Younger abstention in a case such as this one. Williams did not involve privately initiated proceedings. Kelly found abstention inappropriate where the state was not a party to the pending proceedings. However, in the instant case, state officers and other governmental parties are actively involved in the suit. In Burke, the Court considered the fact that the state proceedings were privately instituted to be but one of the many factors mitigating the state's interest in exclusively adjudicating the claims, as weighed against the interest in a federal forum. Thus, the fact that the state did not initiate the instant proceeding is not fatal to the application of the Williams abstention doctrine.
 
 
 51
 Moreover, to put the issue of "private initiation" completely to rest, it must be remembered that the state proceeding was not recently instituted but has long since passed the liability determination and is presently in the enforcement stage. As I have noted, the original decree finding liability was entered June 7, 1972, nearly thirteen years ago, and has been followed since then by other decrees and orders of enforcement. Thus, the present nature of the state proceeding is one that has for all practical purposes lost any "privately initiated" character. The Commonwealth seeks no more than to enforce in its own courts, those decrees long since entered by its own courts. Thus, to reject Williams abstention on the ground that it does not apply where the suit has been privately initiated, is to ignore both the jurisprudential and prudential characteristics of the present state proceedings. In the present case, I am entirely satisfied that Pennsylvania's weighty interest in adjudicating through its own courts a broad remedial program aimed at revamping the Philadelphia prison system more than makes up for the circumstance that the original litigation was instigated by prisoners: the litigation having commenced in 1971 and a liability determination having been entered in 1972.
 
 
 52
 In such a situation where the state court has exercised continuing supervision over its own orders, and has sought to accommodate federal as well as state concerns, it would be improvident for this court to intrude in the ongoing state court proceedings. By the same token, however, it must be recognized, that if, in the unlikely situation that the conditions of which the prisoners complain are not remedied by the Pennsylvania court, no barrier should exist against the prisoners' seeking relief in federal court. Thus, a retention of jurisdiction and a stay of proceedings by the federal court, in order to give the State Court a reasonable time to implement its decree before the imposition of federal remedies, is as appropriate here as we found it to be in Williams, supra.
 
 IV.
 
 53
 Although the prisoners sought a judgment in federal court which would declare the conditions of confinement at Holmesburg Prison to be unconstitutional and sought to enjoin the City defendants from continuing to incarcerate them under unconstitutional conditions, they also sought money damages, costs, and attorneys fees. They sought injunctive relief and money damages against the two state defendants, Waldman and Marks, as well, based upon their actions in certifying the Philadelphia prisons as eligible institutions to receive prisoners. The district court regarded the claims for money damages against the City defendants as barred by res judicata and Colorado River abstention. I agree with the majority's reasoning and holding that the district court erred in applying these doctrines to the circumstances of this case.
 
 
 54
 I disagree, however, with the majority's view that the claims for money damages counsel against abstention in this case. Although the majority piously looks at the claim for money damages and constructs a theory on which it reverses the district court based on the fact that money damages have been sought, any cursory reading of the Complaint and review of the litigational history reveals that this is by far the most insignificant element of the plaintiffs' charge. What the plaintiffs seek here is pure and simple equitable relief and they seek it on federal constitutional grounds. The money damages, as I read the Complaint, are incidental.
 
 
 55
 Until such time as there has been appropriate enforcement of the Pennsylvania court's orders, it is premature even to consider damages against officials whose activities or responsibilities have been challenged. Thus, this is not a case of parallel litigation. As the majority points out, the equitable liability has already been determined in the state court (Maj. op. at 346) and it is the enforcement of this liability over which the majority now seeks to assume control.
 
 
 56
 I am not suggesting for a moment that we decline to exercise jurisdiction. I suggest only that considerations of comity dictate that we withhold our federal hand--while retaining jurisdiction--until the state proceedings have concluded and it is appropriate for federal proceedings to commence, providing always that the federal claims giving rise to these proceedings have not been resolved.
 
 
 57
 Because I would hold that it is inappropriate for a federal court to intrude at this time in the state proceedings (which involve the same subject matter presented by the prisoners' complaint here, and which proceedings have been ongoing and continuous) it would be inappropriate as well for a federal court to adjudicate the merits of the prisoners' claims against the individual City defendants. If the federal court must bide its time with respect to the merits of constitutional violations which the prisoners assert, it is evident that it must also bide its time with respect to resolving claims against the individual defendants where such damage claims may well be resolved in the pending state action.[4] Thus, to this extent the situation presented here is analogous to the situation which obtained in Williams v. Red Bank, supra, where we said,
 
 
 58
 [I]t is difficult to see how the federal court could adjudicate Williams' constitutional claims and attorney's fees until after all disciplinary proceedings have been finally completed. How could the damages be calculated, for example, until it is known whether Williams is to be "acquitted," discharged, or suffer a reduction in salary?
 
 
 59
 So, too, here, it would be exceedingly difficult and, in my opinion, jurisprudentially improper, for the district court to fashion relief for the alleged unconstitutional conditions of Holmesburg prison[5] until the state court has had a reasonable time to implement its remedial decrees.[6]
 
 V.
 
 60
 Within recent weeks, this court has recognized the vital interests that a state has in the administration of its penal system by scheduling a case for in banc consideration where one of the significant issues concerns abstention. Georgevich v. Strauss, No. 84-5194 (3d Cir. Jan. 9, 1985) (order listing case in banc). Georgevich involves the manner in which Pennsylvania may parole its prisoners. The present case involves the administration of prisons and the remedial measures designed to bring the Philadelphia prison system in line with state and federal constitutional requirements.
 
 
 61
 I find no distinction between the importance of the comity issue presented in this case and the importance of the comity issue, which is one of the issues presented in Georgevich. In the present case the majority opinion requires that a federal court override a state's enforcement of its own court orders, which orders have as their objective, compliance with the federal, as well as the state, constitutions. I suggest that if Georgevich warrants the attention of a full court, even more so does this case.
 
 
 62
 I would vacate the judgment of the district court and remand with instructions to retain jurisdiction over the proceedings in order to resolve any federal claims remaining at the conclusion of the state action.
 
 
 
 *
 Hon. Hubert I. Teitelbaum, Chief Judge, United States District Court for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 Defendant Marks moved to dismiss for the following reasons:
 
 
 [1]
 Plaintiffs' Amended Complaint fails to state a claim against defendant Marks upon which relief can be granted
 
 
 [2]
 Plaintiffs' action against defendant Marks is barred by the eleventh amendment
 
 
 [3]
 The claims for injunctive relief by plaintiffs who are no longer confined to Holmesburg are moot
 
 
 [4]
 Plaintiffs' action is barred by principles of res judicata and collateral estoppel
 
 
 [5]
 Defendant Marks is immune from liability for money damages
 Defendant Waldman moved to dismiss for the following reasons:
 
 
 [1]
 The amended complaint fails to state a claim against defendant Waldman upon which relief can be granted because of lack of specificity
 
 
 [2]
 The action against defendant Waldman is barred by the eleventh amendment to the United States Constitution
 
 
 [3]
 The action is barred by principles of res judicata and collateral estoppel
 The Philadelphia defendants also moved to dismiss, but the specific reasons relied upon do not appear in the record before us.
 Grounds for dismissal other than those specified in the written motions apparently were addressed at oral argument in the trial court. The record contains no transcript of that argument. Thus we must depend on the trial court's opinion to determine what contentions were made in support of the Rule 12(b)(6) motions.
 
 
 [2]
 The plaintiffs plead that they are entitled to rely upon the decree in the Common Pleas action. Amended Complaint, p 50, App. 36
 
 
 [3]
 The defendants do not contend that the plaintiffs have failed to exhaust state administrative remedies for prisoner grievances which have been approved by the Attorney General pursuant to the Civil Rights of Institutionalized Persons Act. Pub.L. No. 96-247, Sec. 2, 94 Stat. 349 (1980) (codified at 42 U.S.C. Sec. 1997e(a)(1) (1982)). So far as the record discloses, Pennsylvania has not obtained approval for any such remedies
 
 
 [1]
 Since this appeal arises from a dismissal by the district court under Fed.R.Civ.P. 12(b)(6), only the facts pleaded up to that time are relevant to disposition of the appeal. We note, however, that the Court of Common Pleas issued remedial orders on April 3, 1984 and June 22, 1984, which are subsequent to the date of the district court's dismissal. The orders established a timetable for construction of new facilities, and provided fines in case of non-compliance
 
 
 [2]
 Colorado River Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)
 
 
 [3]
 Similarly, in Scott v. Germano, 381 U.S. 407, 85 S.Ct. 1525, 14 L.Ed.2d 477 (1965), the district court hearing the Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) voting reapportionment case on remand was directed to vacate its judgment and stay its proceedings in order to give pending state court proceedings an opportunity to implement its own remedial plan. See also, Halderman v. Pennhurst State School and Hospital, 673 F.2d 647, 662-671 (1983) (Garth, J. concurring) (federal judicial oversight of state remedial plan preferable to appointment of federal master), rev'd on other grounds, --- U.S. ----, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984)
 
 
 [4]
 It is unclear from the record before us whether the prisoners' claims for money damages against the individual City defendants will be resolved in the state proceedings. Counsel for the City of Philadelphia represented at oral argument that earlier such claims have been previously brought and have been resolved by the Court of Common Pleas. If, in fact, such relief is available in the state court, the granting of such relief may very well moot out the concurrent relief sought in this action. If, however, these claims cannot be resolved in state court, resolution of these claims by the federal court at the conclusion of the state proceedings would be appropriate under Williams v. Red Bank Board of Education, 662 F.2d 1008 (3d Cir.1981)
 
 
 [5]
 Among other claims, the prisoners charged in paragraphs 43 and 44 of their complaint that food was unsanitarily prepared and served; there was a lack of bedding, towels, and toiletries, that there was reduced or inadequate access to recreational facilities, libraries, legal materials, religious services, and telephones; that visitation rights, even of legal counsel, were impaired; and that because of overcrowding prisoners have been subjected to physical attacks, sexual assaults, and psychological injuries. The state defendants have also been charged, in paragraph 54, with having classified the Philadelphia prisons as eligible to receive prisoners notwithstanding the unconstitutional conditions alleged to exist at Holmesburg
 
 
 [6]
 I recognize that state proceedings have continued for some years. However, the state courts have not been inattentive to the claims of the prisoners. As I observed earlier in this opinion, remedial orders have been entered both prior and subsequent to the institution of the instant action, e.g., in June 1983, April 1984, and June 1984, see text supra and accompanying note 1. Moreover, the nature of the conditions complained of is such that remedies may require long term supervision. Thus, the record does not disclose either an unwillingness on the part of the state court, nor an inability on its part, to rule on or correct the subject of the prisoners' complaint